**SIGNED THIS: May 14, 2009**

_____

**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | In Bankruptcy |
| ROGER E. HACK, | ) | |
| | ) | Case No. 08-72553 |
| Debtor. | ) | |

## O P I N I O N

Before the Court is the Objection of Two Rivers FS, Inc. ("Two Rivers") to two priority claims filed herein by Crystal Hack, the ex-wife of Roger E. Hack ("Debtor"). Two Rivers asserts that the claims of Crystal Hack are not based on domestic support obligations which would entitle the claims to priority status but, rather, are based on property settlement obligations and, accordingly, should be treated as general unsecured claims. After hearing testimony and considering the terms of the Judgment for

-1-

Dissolution of the marriage of the Debtor and his ex-wife, the Court agrees with Two Rivers. For the reasons set forth below, the claims of Crystal Hack will be denied priority status and will be allowed only as general unsecured claims. Further, because the Debtor's pending Chapter 12 Plan ("Plan") proposes to treat the claims as priority claims, confirmation of the Plan will also be denied.

The Debtor filed his voluntary petition under Chapter 12 of the Bankruptcy Code on October 16, 2008. On his Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtor listed his ex-wife twice. In both listings, he described the consideration for the claims as "Unsecured Court Ordered Divorce Settlement." He listed one claim amount as $17,774 and the other as $15,000.

Crystal Hack filed both of her claims on December 2, 2008, and the claims were docketed as Claims 3 and 4. Claim 3 is in the amount of $20,234.31, states that the basis for the claim is "Divorce Settlement", and asserts that the claim is entitled to priority status as a domestic support obligation. Attached to the claim is an accounting showing the original amount of the obligation as $31,808.31 and giving credit for $11,574 in payments made during the period from May 2006 through December 2007. Also, attached to the claim is a page from the Hacks' Judgment for Dissolution of Marriage, wherein Debtor is the Respondent, which

-2-

includes the following:

> K.    Beginning March 1, 2006, the Respondent shall
> pay the indebtedness plus any accrued interest or future
> interest, on the Household Credit - Mastercard, Citi Bank
> credit card and Bank America credit card having a balance
> as of March 1, 2006 in the approximate sum of $8,643.47.
> The Respondent shall make monthly payments to Clear Point
> Financial Solutions in the approximate sum of $643.47 or
> pay off the entire amount in a lump sum.  Upon paying off
> the above stated credit cards, the Respondent shall pay
> to the Petitioner the sum of $23,164.84 representing all
> payments paid by the Petitioner through March 1, 2006.
> The Respondent shall pay off this indebtedness at the
> rate of $643.47 per month beginning when he has paid off
> all 3 credit cards but to begin no later than September,
> 2007.  This amount shall not bear interest.

Claim 4, in the amount of $17,991.15, also states that it is based on a "Divorce Settlement", and also asserts entitlement to priority status.  Attached to the claim is an accounting showing an original balance due of $20,000, payments made in the aggregate amount of $5000 during the period January 2007 through May 2007, and accrued interest due of $2991.15.  Also attached is a page from the Judgment for Dissolution of Marriage which includes the following:

> I.    The Petitioner relinquishes all interest in the
> farm operation and hog operation and will execute any and
> all deeds or Bills of Sale.  In return, the Respondent is
> to pay to Petitioner the sum of $20,000.00 at the rate of
> 6% payable on or before January 1st, 2007.

Debtor filed his Plan on January 27, 2009.  Debtor proposes to pay both claims of Crystal Hack in full during the five year duration of the Plan.  Debtor asserts that both claims are entitled to priority "under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B)."   Debtor

-3-

describes both obligations in the Plan as "property settlements."

On February 18, 2009, Two Rivers filed an objection to confirmation of the Plan and an objection to the claims filed by Crystal Hack.  The gist of both objections is the same.  Two Rivers asserts that Crystal Hack's claims are property settlement obligations and, accordingly, not entitled to priority status.  Two Rivers argues that the claims should be allowed only as general unsecured claims and that Plan confirmation should be denied because the Plan proposes to pay the claims in full without providing the same treatment for other general unsecured claims.  Crystal Hack filed a response to the claims objection asserting that her claims are, in fact, based on domestic support obligations.  An evidentiary hearing was held on April 14, 2009.  The matter is ready for decision.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") introduced the term "domestic support obligation".  A domestic support obligation is defined in pertinent part as:

> (14A)  The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable non-bankruptcy law notwithstanding any other provision of this title, that is -
>
> (A)  owed to or recoverable by -
>
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible representative; or

        (ii) a governmental unit;

      (B)  in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated[.]

\* \* \* \*

11 U.S.C. §101(14A)

    Domestic support obligations are not dischargeable in Chapter 12 cases.  *See* 11 U.S.C. §523(a)(5), §1228(a)(2).  Domestic support obligations are priority claims and, accordingly, a Chapter 12 plan must generally propose to pay all such obligations in full in order to be confirmable.  11 U.S.C. §507(a)(1)(A)&(B), §1222(a)(2).

    Obligations owed to a spouse, former spouse, or child of a debtor which arose in connection with a divorce or separation but which are not in the nature of support and, accordingly, are not domestic support obligations, are generally referred to as "property settlement".  Property settlement obligations are also not dischargeable in Chapter 12 cases.  *See* 11 U.S.C. §523(a)(15), §1228(a)(2).  Property settlement obligations are not, however, priority claims and, therefore, must be paid *pro rata* with other general unsecured claims in Chapter 12 plans.  11 U.S.C. §507, §1222(b)(1).

    Two Rivers correctly analyzes why the Debtor wants to classify Crystal Hack's claims as domestic support obligations in

-5-

his Plan even though he scheduled the obligations as property settlement. The obligations are not dischargeable regardless of classification. However, if the Debtor is allowed to pay his ex-wife as a priority creditor, he can devote his limited resources to the payment of her nondischargeable claims at the expense of his other unsecured creditors. If, however, his ex-wife's claims must be treated as general unsecured claims, her claims will be paid *pro rata* with his other unsecured creditors and, unless the Debtor proposes to pay all of his unsecured creditors in full, he will be left owing his ex-wife some portion of her claims after his Plan is completed.

Although the term "domestic support obligation" was just introduced into the bankruptcy vocabulary in 2005, the concept of distinguishing between marital or divorce obligations which are in the nature of support and those which are property settlement is not new. A significant body of case law has developed over many years discussing the various factors courts should consider when determining the true nature of a marital or divorce obligation. *See, e.g.*, In re Woods, 561 F.2d 27, 30 (7th Cir. 1977); In re Wright, 184 B.R. 318, 321 (Bankr. N.D. Ill. 1995); In re Zeitchik, 369 B.R. 900, 904 (Bankr. E.D. N.C. 2007). Perhaps the most comprehensive list of factors which should be considered in determining whether an obligation is in the nature of support or is property settlement is found in In re Daulton, 139 B.R. 708, 710

(Bankr. C.D. Ill. 1992).  The <u>Daulton</u> list includes the following:

    1.  Whether the settlement agreement includes payment for the ex-spouse;

    2.  Whether there is any indication that provisions within the agreement were intended to balance the relative income of the parties;

    3.  The position of the assumption to pay debts within the agreement;

    4.  The character or method of payment of the assumption;

    5.  The nature of the obligation;

    6.  Whether children resulted which had to be provided for;

    7.  The relative future earning power of the spouse;

    8.  The adequacy of support absent debt assumption;

    9.  The parties' understanding of the provisions;

    10.  The label of the obligations;

    11.  The age of the parties;

    12.  The health of the parties;

    13.  Existence of "hold harmless" or assumption terminology;

    14.  Whether the assumption terminated upon death or remarriage;

    15.  Whether the parties had counsel;

    16.  Whether there was a knowing, voluntary, and intelligent waiver of rights;

    17.  Length of the marriage;

    18.  Employment of the parties;

19.    The demeanor and credibility of the parties;

20.    Other special or unique circumstances of the parties.

Id. at 710.[1]

Although limited evidence was presented on the various factors that should be considered, sufficient information is available to allow at least some of the factors to be analyzed.  A number of the Daulton factors require a review of the Judgment for Dissolution of Marriage on its face.  Crystal Hack submitted a copy of the entire document with her response to the claims objection.

The Hacks' Judgment for Dissolution, entered February 1, 2006, does not contain labeled sub-sections identifying the portions of the document which deal with the various issues contained therein. The paragraphs in the Judgment for Dissolution do, however, appear at least to be grouped by issues.  Paragraphs B through G all relate to the custody, visitation, support, and education of the Hacks' son.  Paragraphs H through M all discuss property division and debt allocation.  Paragraphs I and K are at issue here and they are included in the same area of the document as Paragraph H which awards Crystal Hack a vehicle, Paragraph J which divides the parties' furniture and household items, Paragraph L which deals with the marital residence and the indebtedness related to it, and

---

[1]    Many of these factors bear a similarity to the factors Illinois state courts use in determining whether to award maintenance in the first place.  See 750 ILCS §5/504.

Paragraph M which allocates Crystal Hack's pension funds to her. Paragraph Q, located near the end of the document, contains a waiver of maintenance by both parties. Looking at the Judgment as a whole, Paragraphs I and K appear to be property settlement provisions. Nothing on the face of the Judgment for Dissolution would support a finding that the obligations in question are in the nature of support.

Many of the <u>Daulton</u> factors require going beyond the "four corners" of the documents to conduct an analysis of the true nature of the obligations in question. Here, Claim 3 relates to the payment of several credit card debts. Crystal Hack testified that she held the credit cards in her name alone and the Debtor and his brother, with whom the Debtor farms, used the cards with her permission to pay farm expenses. At the time of their divorce, it was agreed that the Debtor would pay the remaining balances on the cards and reimburse his ex-wife for the amounts she had already paid for farm bills charged to her credit cards.

Claim 4 relates to the Debtor's hog farm. Crystal Hack testified that she and the Debtor agreed that $20,000 was a fair amount for her to receive to relinquish any interest she had in the Debtor's farming operation. She testified that she needed the money to purchase a new home for herself and her son. She also testified that she has now purchased a home even though the Debtor has not yet paid all of the amounts due to her.

In analyzing the true nature of these claims, the Court must determine whether, in fixing these obligations, any consideration was given to the age of the parties, the health of the parties, or the current and future earning capacity of the parties. *See* Daulton, 139 B.R. *at* 710.  Further, the Court must determine whether the obligations arose in an effort to balance the respective incomes of the parties.  Id.  The Judgment for Dissolution discloses that, at the time of the divorce in 2006, the Debtor was 41 years of age and self-employed as a farmer and Crystal Hack was 37 years old and employed.  There is no evidence that Crystal Hack was unable to support herself or that her health or any other special circumstances suggested she might have difficulty supporting herself in the future.

To the contrary, in her testimony, Crystal Hack stated that she and the Debtor were separated for approximately three years before the Judgment for Dissolution was finalized.  She testified that during that three-year period, she received no monetary support from the Debtor.  Equally important, Crystal Hack testified that during their marriage, she and the Debtor kept their funds separate and the Debtor only occasionally gave her money if she had a major purchase to make.  Crystal Hack's testimony clearly established that she was self-sufficient throughout the marriage and during the period of separation prior to the divorce.

Relying on Workman v. Workman, 89 Ill.App.3d 886, 412 N.E.2d

-10-

614 (1980), Crystal Hack asserts that notwithstanding the lack of other _Daulton_ factors supporting her position, this Court should look to the parties' intent as determinative of the true nature of the obligations in question. *See also* In re Reines, 142 F.3d 970, 973 (7th Cir. 1998); In re Pearce, 245 B.R. 578, 583 (Bankr. S.D. Ill. 2000).  To that end, Crystal Hack submitted an affidavit and testimony that her intent was to accept the funds described in her claims as support.  Although the Court found Crystal Hack to be generally a credible witness, her testimony as to her intent is undercut by the other facts presented and her own conduct regarding the tax treatment of payments received.

As set forth above, virtually all of the _Daulton_ factors upon which some evidence was presented suggest that the obligations of the Debtor to Crystal Hack are property settlement rather than in the nature of support.  Crystal Hack's self-serving testimony that she intended the obligations to be support is inadequate to overcome the weight of the other evidence.  Crystal Hack now says that she needed the money to purchase a residence but, presumably, she also needed the vehicle, furniture, and other personal property awarded to her in the Judgment for Dissolution.  Need alone does not transform what is clearly property settlement into support. Further, the strong evidence of Crystal Hack's self-sufficiency throughout the marriage and thereafter suggests that no award of alimony or maintenance would have been intended by the parties.

-11-

One factor often used to determine the actual intent of parties when it comes to determining the true nature of a marital or divorce obligation is how the parties have handled the tax consequences of the obligation. *See* <u>Zeitchik</u>, 369 B.R. *at* 905. Generally, alimony or maintenance payments are income tax deductible to the payor and income taxable to the recipient. *See* 26 U.S.C. §71, §215; <u>In re Marriage of Morreale</u>, 351 Ill.App.3d 238, 242-43, 813 N.E.2d 313, 318 (2004). A payor who has taken the tax deduction for a support payment should not be allowed to later claim that the obligation was really property settlement. *See* <u>Zeitchik</u>, 369 B.R. *at* 905, *citing* <u>In re Robb</u>, 23 F.3d 895, 899 (4th Cir. 1994). Likewise, a recipient who has never paid tax on payments received should not later be able to claim that the payments were alimony or maintenance. <u>Zeitchik</u>, 369 B.R. *at* 905.

The issue of the tax consequences of alimony or maintenance payments was discussed during opening statements at the April 14th hearing and the Court expressed the view that evidence of the parties' tax treatment of the payments was a key factor in establishing the parties' true intent. Nevertheless, Crystal Hack's attorney failed to present any evidence on the issue. Accordingly, the Court must assume, as Two Rivers urges it to do, that for tax purposes, neither the Debtor nor Crystal Hack treated the payments made on the obligations in question here in a manner consistent with their current assertions that the obligations are

-12-

in the nature of support.

On the issue of intent, it is also important to note that the Court should consider not just Crystal Hack's alleged intent but also the intent of the Debtor. *See* <u>In re Bornemann</u>, 2008 WL 818314 *at* \*3 (S.D. Ill. Mar. 21, 2008)(in reviewing the true nature of a divorce obligation, a court must consider the mutual intent of the parties, not the personal intent of one party). The Debtor did not appear at the April 14th hearing. His attorney appeared but took no active role in the proceedings. Accordingly, the Court must assume that the Debtor had no evidence to present or legal arguments to make in support of a priority classification for his ex-wife's claims.

Further, all parties are aware that the Debtor filed a prior case under Chapter 13 of the Bankruptcy Code in March 2008.[2] In that case, the Debtor scheduled his obligations to his ex-wife in the same manner as in the instant case. In his Chapter 13 plan, however, Debtor proposed to pay his ex-wife's claims as general unsecured claims, not as priority claims. Under Chapter 13, property settlement obligations are dischargeable. *See* 11 U.S.C. §523(a)(15); §1328(a)(2). Debtor's inconsistent proposals for the treatment of his ex-wife's claims lead only to the conclusion that his intent is to propose what is most beneficial for himself.

---

[2]   <u>In re Roger E. Hack</u>, 08-70700, was filed March 26, 2008. The case was dismissed on September 29, 2008.

-13-

Thus, the Debtor's credibility, at least with respect to the issues before the Court here, is questionable.

This Court is aware that the Bankruptcy Rules provide that a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. *See* Fed.R. Bankr.P. 3001(f). No challenge is made, however, to the basic validity or amount of Crystal Hack's claims. The Rules do not create an evidentiary presumption that properly filed claims are entitled to priority or secured status simply because such status is asserted. The burden of proof on the issue of priority is a matter of substantive law and in this case that burden falls squarely on Crystal Hack. *See* <u>Raleigh v. Illinois Dept. of Revenue</u>, 530 U.S. 15, 20-21, 120 S.Ct 1951, 1955 (2000). Crystal Hack did not meet her burden of proof.

By reason of all of the above, the objection of Two Rivers to the claims of Crystal Hack must be sustained. Crystal Hack's claims will be denied priority status and allowed only as general unsecured claims.

Having found that Crystal Hack's claims may not be paid as priority claims, the Court must now also deny confirmation of the Debtor's pending Plan. The Plan proposes to pay the claims with priority. An amended plan must be filed which treats Crystal Hack's claims as general unsecured claims and devotes the funds previously allocated for payments to Crystal Hack to the *pro rata*

-14-

payment of all general unsecured creditors.  The Debtor will be given an opportunity to amend his Plan accordingly.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###